UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC, as Broadcast Licensee of the January 7, 2023 Gervonta Davis v. Hector Luis Garcia Championship Fight Program, | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 3:26-CV-0015-X |
| TACO CITY Y MAS, LLC, individually, and d/b/a TACO CITY Y MAS; and JUAN RODRIGUEZ, individually, and d/b/a TACO CITY Y MAS, | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER AND FINAL JUDGMENT**

Plaintiff G&G Closed Circuit Events (G&G) sued Taco City Y Mas, LLC and Juan Rodriguez for illegally intercepting the closed-circuit telecast of the January 7, 2023 Gervonta Davis v. Hector Luis Garcia Championship Fight Program (Event). G&G obtained the clerk's default on liability. (Doc. 13). Now G&G seeks a default judgment against the defendants that includes statutory damages, additional damages, and attorney's fees. (Doc. 15). For the reasons below, the Court **GRANTS IN PART** the motion for default judgment and enters final judgment in favor of G&G.

## I. Background

G&G has exclusive authority to sublicense the Event at closed-circuit locations such as theaters, arenas, bars, clubs, lounges, restaurants, and the like throughout Texas. G&G never authorized the defendants to show the Event at their Establishment. Nor did the defendants pay G&G a licensing fee to show the Event at their Establishment.

## II. Legal Standards

Federal Rule of Civil Procedure 55(b)(2) provides that, in proceedings not involving a certain sum:

> the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.[1]

A default requires a court to accept as true a plaintiff's well-pled allegations in a complaint.[2]

---

[1] FED. R. CIV. P. 55(b)(2).

[2] *See, e.g.*, *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015) (a complaint is well-pled when "all elements of [a] cause of action are present by implication"); *Matter of*

In determining whether to enter a default judgment, courts conduct a two-part analysis. First, courts examine whether a default judgment is appropriate under the circumstances.[3] Relevant factors (called the *Lindsey* factors) include: (1) whether disputes of material fact exist; (2) whether substantial prejudice occurred; (3) whether grounds for default are clearly established; (4) whether a good faith mistake or excusable neglect caused the default; (5) the harshness of a default judgment; and (6) whether the court would be obliged to grant a motion from the defendant to set the default judgment aside.[4] Second, the Court assesses the merits of the plaintiff's claims and whether those claims have a sufficient basis in the pleadings.[5]

## III. Application

The Court deems admitted the facts on liability and finds that the defendants are neither incompetent or minors. While Rule 55 allows for hearings, it does not command them. G&G's supported its motion with a declaration. As a result, the Court can properly rule without a hearing.

### A. Procedural Appropriateness of Default Judgment

The Court now turns to the six *Lindsey* factors. First, there are no material facts in dispute because the defendants have failed to appear or otherwise defend the

*Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("It is universally understood that a default operates as a deemed admission of liability.").

[3] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[4] *Id.*

[5] *Nishimatsu Constr. Co., Ltd. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

action. Second, the defendants' failure to defend the action has brought adversarial proceedings to a halt and thus has prejudiced G&G. Third, the defendants' failure to appear via licensed counsel to defend this action renders default proper. Fourth, the defendants have not offered any evidence that they acted under a good faith mistake or excusable neglect. Fifth, nothing suggests that it would be too harsh to enter default judgment against the defendants, who received ample notice of the action and sufficient time to respond. Sixth, the defendants' lack of defense indicates a lack of good cause for the Court to set aside the default judgment should the defendants file a motion to set aside in the future. So the Court concludes that a default judgment is appropriate under these circumstances.

**B. Sufficiency of G&G's Claim**

Next, the Court must assess the merits of G&G's piracy claim. Although the defendants, by virtue of their default, are deemed to have admitted G&G's well-pled allegations, the Court must nonetheless review the complaint to determine whether it established a viable claim for relief.[6]

The Federal Communications Act (FCA) combats against the piracy of radio and television signals.[7] The FCA prohibits "intercept[ing] any radio communication and divulg[ing] or publish[ing] the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person" without authorization

---

[6] *Id.*

[7] *See* 47 U.S.C. §§ 553, 605.

from the sender.[8] Because the FCA operates as strict-liability statute, G&G need only show that (1) the defendants' Establishment showed the programs; (2) G&G did not authorize the defendants to show the programs; and (3) G&G has an exclusive license to show the programs.[9]

G&G has demonstrated each of these elements, so default judgment is proper. First, G&G alleges that the defendants' Establishment showed the Event.[10] Second, G&G alleges that it did not authorize the defendants to show the Event.[11] Third, G&G alleges that it had exclusive authority to sub-license the event.[12] Because these allegations sufficiently raise G&G's right to relief above the speculative level, the Court finds that default judgment is warranted here.[13]

Accordingly, G&G's claim has substantive merit. While default judgments are "a drastic remedy, not favored by the Federal Rules," G&G's entitlement here is beyond dispute.[14] So the Court must next "determine what form of relief, if any, the plaintiff should receive."[15]

---

[8] 47 U.S.C. § 605(a).

[9] *J&J Sports Prods., Inc. v. El 33, LLC*, No. EP-11-CV-519-KC, 2013 WL 164521, at *3 (W.D. Tex. Jan. 14, 2013).

[10] Doc. 1 at 4; *see* Doc. 15-1 at 24–31 (affidavit of eyewitness Everett New who visited the Establishment).

[11] Doc. 1 at 5.

[12] *Id.* at 3–4.

[13] *See Wooten*, 788 F.3d at 498.

[14] See *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).

[15] *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex 2015) (Boyle, J.).

### C. Damages

G&G seeks $10,000 in statutory damages, $50,000 in additional damages, and $20,000 in attorney's fees and of costs.[16]

*Statutory Damages*

G&G seeks statutory damages under 47 U.S.C. section 605(e)(3)(C)(i)(II).[17] G&G presents evidence that the defendants would have paid G&G a sublicensing fee of at least $610.50 to lawfully broadcast the Event.[18] Because only awarding the amount a defendant would have been charged for a sublicense fee insufficiently deters piracy, courts generally disfavor only awarding that amount.[19] But $10,000.00 is excessive and the Court concludes that three times the licensing fee is reasonable. Thus, the Court awards $1,831.50 in statutory damages in this action.

*Willful Damages*

G&G maintains that "because of the absence of any way in which the defendants could have 'innocently' accessed the broadcast of the Event, it is apparent that [the defendants] specifically and willfully acted to illegally intercept the transmissions of the Event for the defendants' commercial advantage."[20] Courts

---

[16] Doc. 15 at 12.

[17] *Id.*

[18] Doc. 15-1 at 24–25, 33. G&G does not present specific evidence of Taco City Y Mas, LLC's capacity at the Mesquite location, but counted "42 patrons and 4 staff in the business." *Id.* at 25.

[19] *See G&G Closed Circuit Events LLC v. Dallas Tacos Pancho Inc.*, No. 3:23-CV-2778-S, 2025 WL 1757296, at *6 (N.D. Tex. May 15, 2025) (Horan, M.J.) (collecting cases), report and recommendation adopted, No. 3:23-CV-2778-S, 2025 WL 1756378 (N.D. Tex. June 25, 2025) (Scholer, J.).

[20] Doc. 15 at 8.

have generally accepted this reasoning.[21] G&G seeks $50,000—five times its requested statutory damages. But courts generally reserve a multiplier such as this for illegal transmissions for a large number of patrons.[22]

Here, G&G's submits evidence that only forty-two patrons went inside the defendants' Establishment on one occasion.[23] So a five-times multiplier is unwarranted, and the Court concludes that it should award additional damages amounting to three times the statutory damages award given the circumstances. So the Court awards G&G $5,494.50 in additional damages.

*Attorney's Fees and Costs*

Finally, G&G seeks an award of attorney's fees under 47 U.S.C. section 605(e)(3)(B)(iii) for one-third of the amount of its recovery. While the Court will award fees, the Court prefers the time-honored lodestar method to ensure G&G's attorney recovers no more but no less than he earned. Fortunately, counsel proved up his hourly rate times hours worked as an alternative basis for fees. The Court finds his hourly rate of $300 an hour for anti-piracy litigation (given his experience in the field) and his 10 hours worked on the matter (proven by line-item entries) reasonable and necessary.[24] Accordingly, the Court awards attorney's fees

---

[21] *Dallas Tacos*, 2025 WL 1757296, at *7 (N.D. Tex. May 15, 2025) (Horan, J.).

[22] *See G&G Closed Circuit Events, LLC v. Bar Sante Fe LLC*, No. 3:23-CV-370-S, 2024 WL 3237175, at *7 (N.D. Tex. June 6, 2024) (Horan, J.) (collecting cases), report and recommendation adopted, No. 3:23-CV-0370-S, 2024 WL 3240675 (N.D. Tex. June 28, 2024) (Scholer, J.).

[23] Doc. 15-1 at 24–25.

[24] Doc. 15-1 at 39–40.

of $3,000 in addition to statutory damages. In the event the defendants engage in litigation in the future, the Court will award supplemental fees at the appropriate time.

G&G is also entitled to costs of Court. It should file a bill of costs within fourteen days.

Finally, G&G is entitled to post-judgment interest as allowed by law.[25]

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** G&G's motion for default judgment against the defendants. The Court awards G&G $1,831.50 in statutory damages, $5,494.50 in additional willful damages, $3,000 in attorney's fees, and post-judgment interest of 4.22%. This is a final judgment. The Court denies all relief it did not expressly grant.

**IT IS SO ORDERED** this 14th day of October, 2026.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

[25] *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."). The 1-year average Treasury yield on October 7, 2026, was 4.22%. *See* Selected Interest Rates (Daily) - H.15, Board of Governors of the Federal Reserve System, October 8, 2026, *at* https://www.federalreserve.gov/releases/h15/.